## MATTHEW HUNT *vs.* HIRAM CARLISLE.

A pilot of the harbor of Boston, who offers his services to the master of an inward bound vessel subject to the pilotage laws, outside of the line prescribed by Rev. Sts. *c.* 32, § 24, is entitled to pilotage fees, although the vessel in tacking has already been inside the line.

The master of a vessel subject to the pilotage laws, and bound to a wharf above Charlestown Bridge, is liable to pay fees of pilotage to a pilot of the harbor of Boston, who seasonably offers to pilot the vessel as far as the draw of the bridge, but refuses to take her beyond, on proof of a uniform usage of the pilots, ever since the erection of the bridges, to pilot a vessel, bound to places above a bridge, only as far as the bridge.

ACTION OF CONTRACT for pilotage fees. The parties submitted the case to the decision of the court upon the following facts, with the agreement that the court might draw any inferences, which a jury would be warranted in drawing.

The port of Boston, as construed by the custom house department, and as used for commercial purposes, comprises all the wharves fronting on the harbor around the city of Boston, both above and below the bridges, and also the wharves around the city of Charlestown; and vessels subject to pilotage unload at said wharves. The Barque Homer, of more than two hundred tons burden, and of a class of vessels liable to pay fees of pilotage, under the command of the defendant, was off the port of Boston, bound in, and destined to a wharf in Charlestown just above Charlestown Bridge. She was beating in against the wind through Broad Sound, and had crossed the line drawn from the Outer Graves to Nahant Head, and had then tacked and run

22 *

northerly towards Nahant, and was in the act of tacking again, being outside of the pilot's line, when the plaintiff offered his services thus: Pilot. " Will you take a pilot?" Master. "Am I not within the line?" Pilot. " No." Master. " Will you take me to a wharf above one bridge?" Pilot. " No." The vessel then proceeded without a pilot.

The pilots have, in all cases, taken vessels inward bound, and destined to a point above a bridge, either to the lower pier of the draw of the bridge, or to a place of anchorage in the stream, near the draw, and have there left them in the charge of the master. This practice has existed ever since the building of the bridges across the mouth of Charles River, without interruption, to the present time. Except in the case of one or two British vessels, no demand has ever been made upon a pilot to take a vessel through the draw; pilots have occasionally been asked by masters of coasting vessels, if they were not bound to take vessels through the draw to wharves above the bridge; but, in all these cases, the pilots have replied that their duties ended at the first bridge; and in no case has a pilot taken a vessel through the draw, and above the bridge, when acting as a pilot; and in cases of all outward bound vessels coming from above the bridges, the pilots take charge of them below the bridges.

The rules and regulations of the commissioners of pilots, made on the 2d of November 1848, and approved by the trustees of the Boston Marine Society, and duly published, pursuant to Rev. Sts. c. 32, § 21, contain the following provisions: " If any branch pilot of the harbor of Boston offers himself, to any vessel liable to take a pilot, outside of a line drawn from Harding's Rocks to the outward Graves, and from thence to Nahant Head, if inward bound, and the master of the vessel should refuse to take such pilot on board, the master and owners of said vessel, or either of them, shall incur and be liable to the penalty of the amount of pilotage said vessel would pay, for the benefit of the pilot so offering himself, if he be the complainant."

" It shall be the duty of every pilot, after having brought a vessel into the harbor of Boston, to have such vessel properly

moored in the stream, or secured to a wharf, at the option of the master, within twenty four hours after the arrival of said vessel, if the weather permits, without extra charge. The pilot, if called upon after the expiration of twenty four hours from her first anchoring to haul any vessel into the wharf, shall be entitled to receive three dollars for his services; and a pilot shall be entitled to receive the same for taking a vessel from the wharf into the stream, provided said vessel does not proceed to sea within twenty four hours from the time of her anchoring in the stream."

*H. Jewell*, for the plaintiff.

*E. H. Derby*, for the defendant.

BIGELOW, J. The defendant rests his defence to the claim of the plaintiff for pilotage on two grounds.

The first is, that the tender of service by the plaintiff was not seasonably made. By Rev. Sts. *c.* 32, § 24, a pilot is required, in order to entitle himself to his fees, to offer his services to an inward bound vessel " before such vessel shall have passed a line drawn from Harding's Rocks to the Outer Graves, and from thence to Nahant Head." Upon the facts proved in this case, the defendant contends, that although at the moment of the offer by the plaintiff to pilot the vessel he was outside of said line, yet he is not liable for the pilot's fees, because, before he was hailed by the pilot, he had, in beating into the harbor against the wind through Broad Sound, gone inside of the line, and in running upon another tack northerly towards Nahant, had again gone outside of the line, so that the offer of the plaintiff was not made, in compliance with the statute, before he had passed the line. But we think this objection rests on too narrow a construction of the provision of the statute. The requisition that the tender of the pilot's services shall be made before the vessel has passed said line, refers to a final passing of the line by the vessel, on her inward bound course, and not to a mere temporary and accidental passing of it, followed by a retrogression outside the line. The object of the law was to secure inward bound vessels the services of a pilot in navigating the outer and more difficult approaches of the harbor. When therefore a vessel is outside the prescribed line from any cause,

and is inward bound, she is in that position where the law sup· poses a vessel to need a pilot, and where the pilot is required to tender his services, in order to entitle himself to his legal compensation.    It is of no importance that the vessel has previously passed the line.    Suppose a vessel on her voyage inward to have passed the line without being hailed by a pilot, and before her arrival, by an adverse gale, to be driven back into the outer harbor.    Can there be any doubt, that on her return she would be liable for pilotage, if the services of a pilot were seasonably tendered, notwithstanding she had previously passed the line without a pilot?    We are unable to distinguish the case at bar from the case we have supposed.

The practical construction of this provision of the statute by the commissioners of pilots for the harbor of Boston is in accordance with this view.    The regulations passed by them only require a pilot to offer his services outside the prescribed line.

The remaining ground of defence is, that the defendant is not liable for pilotage, because the plaintiff refused to pilot the defendant's vessel above one of the bridges leading from Boston across the mouth of Charles River.    But the facts agreed show an unbroken usage of the pilots in Boston harbor, ever since the erection of said bridges, to pilot vessels, destined to places or wharves above the bridges, either to the lower pier of the draw of the bridge, or to a place of anchorage in the stream near the draw, and there leave them in charge of their masters.    It was decided in *Martin* v. *Hilton,* 9 Met. 371, that evidence was admissible to show the actual limits of the pilotage grounds in the harbor of Boston, and that pilots were not bound to take charge of vessels beyond the limits thus established by long continued usage.    In the present case, the facts abundantly prove a uniform usage, by which the pilot is discharged of his duty, and entitled to his fees, without piloting vessels above the bridges. This usage has existed, under regulations of the commissioners of pilots, similar to those now in force, for many years.    *Hunt* v. *Mickey,* 12 Met. 347.    This objection therefore cannot prevail, and there must be                    *Judgment for the plaintiff.*